AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| INFORMATION ASSOCIATED WITH INSTAGRAM | ) | Case No. 24-mj-28 |
| ACCOUNT U2DAKUSH AND UKKASHAALI08  THAT IS | ) | |
| STORED AT PREMISES CONTROLLED BY META | ) | |
| PLATFORMS, INC. | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(1) | Interstate Stalking |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

❒ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Chandler Hudspeth, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ___March 25, 2024___

_____
*Judge's signature*

City and state: ___Baton Rouge, Louisiana___          Scott D. Johnson, U.S. Magistrate Judge
_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT U2DAKUSH AND UKKASHAALI08 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 24-mj-28 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **CHANDLER HUDSPETH**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I make this affidavit in support of an application for a search warrant for information associated with Instagram accounts **u2dakush** and **UKKASHAALI08** (the "**TARGET ACCOUNTS**") that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

1

2.      I am a Special Agent ("SA") with the Federal Bureau of Investigation and have been employed in such capacity since June, 2023.  I was previously employed by the Beaumont Police Department in Beaumont, Texas, as a police officer from January 2017 to June 2023.  I was also employed with the Jefferson County Sheriff's Office in Jefferson County, Texas from January 2016 to January 2017.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2261A(1) (Interstate Stalking) have been committed by Ukkasha Ali-Suleiman.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

**JURISDICTION**

5.      This Court has jurisdiction to issue the requested warrant because it is a court of competent jurisdiction as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the United States District Court for the Middle District of Louisiana is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6.      I am investigating interstate stalking violations committed by Ukkasha Ali-Suleiman ("Ali-Suleiman"), a resident of Canton, Michigan.  On August 8, 2021, Ali-Suleiman entered the Olympic Training Center located in Lake Placid, New York, without permission and remained in the facility for approximately 13 hours, from approximately 6:40

2

p.m. until 8:00 a.m. the following morning.  Ali-Suleiman had no ties to the Olympic

Training Center and was asked to leave by employees, which he did without incident. At this

time, Ali-Suleiman resided in Canton, Michigan.

7.       At the time Ali-Suleiman entered the Olympic Training Center without

permission, Lori Susan "Lolo" Jones ("Jones") was training at the facility and received

security reports and social media posts regarding Ali-Suleiman's attempts to contact her.

Prior to this incident, Jones had no previous contact or dealings with Ali-Suleiman.

8.       During this time, Ali-Suleiman posted numerous publicly accessible posts

from his account @U2dakush on Twitter (now known as "X"), tagging Jones' x/Twitter

social media account @lolojones. One post read "I don't know what hotel you stay at, your

wasting my time, a whole day of working out gone, pull up bitch @lolojones." Another post

from @U2dakush was "Pull up @lolojones I'm here all day." Attached to this post were

three photos uploaded by @u2dakush. These photos showed Ali-Suleiman's face, a picture

of his legs by a bag and a screenshot of a map from a mobile application, showing his current

location in front of Adirondack Corner Store located at 188 Newman Rd, Lake Placid, New

York 12946. Ali-Suleiman also posted, "Bitch where you at @lolojones I need I don't know

they talking about." Another post from Ali-Suleiman was a photo depicting Ali-Suleiman

that was taken from inside the Olympic Training Center in Lake Placid, New York,

identifiable from the Team USA signage in the background with the caption, "What's

happening @lolojones."  These posts are shown as follows:



9.    Due to Ali-Suleiman's attempts to contact her, Jones left Lake Placid and went to Canada during the time Ali-Suleiman was there as she was concerned for her safety.

4

Jones also blocked Ali-Suleiman on X/Twitter and Instagram.  Ali-Suleiman remained in the Lake Placid area for approximately two weeks.

10.    Two months later, on October 9, 2021 at 6:35 a.m., records received from Lyft showed that Ali-Suleiman was in the Baton Rouge, Louisiana area (where Jones resides). Because Ali-Suleiman has no known family, business, or social ties to Baton Rouge, it is believed he made this trip as another attempt to encounter Jones.  Lyft records show that Ali-Suleiman traveled from 7361 Airline Hwy, Baton Rouge, LA 70805 (Salvation Army) to 9430 Jackie Cochran Dr, Baton Rouge, LA 70811 (Baton Rouge Airport).

11.    Since the Lake Placid incident, Ali-Suleiman has also contacted individuals through social media in attempts to contact Jones. Specifically, Ali-Suleiman contacted Jones' friend, Witness 1, via Instagram. Witness 1 is a photographer based out of Baton Rouge.

12.    On December 2, 2022, Ali-Suleiman using the Instagram username u2dakush, one of the TARGET ACCOUNTS, posted a picture of himself in front of Jones' front yard, identifiable by the landscaping and an Olympic rings sculpture, and tagged Witness 1. The photo was captioned "I'm kind of autistic @sarahwardweddings tell LOLO I'm sorry" and "Yea I kind of ambushed her @sarahwardweddings but it was all in good faith won't do that again. Tell her I'm sorry; I'll be official."  Witness 1 recognized that Ali-Suleiman was at Jones' house in the photo and notified Jones.  Witness 1 provided the following screenshots to Jones:





13.    Additional comments from u2dakush on Instagram were posted that read, "She thinks I don't know I'm going insane without her doing the same thing over and over again being a nigger @sarahwardweddings I played all the rolls; better than forest gump and I'm not TOM HANKS, I'm 32 years old currently I don't have to abuse my women to get laid I act so I don't fuck them, I am articulate/witty I can get who ever want. I'll be 40 yr Virgin; I can speak I just choose not to play special needs". Witness 1 had never heard of or met Ali-Suleiman before this post.



14.    In October 2023, Ali-Suleiman tagged another friend of Jones on social media, Witness 2, while he was visiting Jones.  Witness 2 ignored the post and blocked Ali-Suleiman.

15.    Ali-Suleiman finally encountered Jones in person on January 3, 2024, when he traveled from Michigan to her residence in Prairieville, Louisiana, and waited outside of her front door until Jones opened her garage and spotted him. Jones recognized Ali-Suleiman from his previous attempts to contact her and immediately contacted police.

16.    Ali-Suleiman was subsequently arrested at Jones' residence in Prairieville, Louisiana for violating LRS 14:40.2 (stalking) and LRS 14:63 (criminal trespass/trespassing of real property) by the Ascension Parish Sheriff's Office (APSO).  Records received from American Airlines indicate that Ali-Suleiman flew from Detroit, Michigan and landed in Baton Rouge, Louisiana on January 3, 2024, at 12:30 a.m.  Records received from Lyft records showed that Ali-Suleiman traveled on January 3, 2024 at 6:41 a.m. from 9430 Jackie

Cochran Dr, Baton Rouge, LA 70811 (Baton Rouge Airport), to Jones' home address in

Prairieville, Louisiana.

17.     APSO obtained and executed a search warrant for Ali-Suleiman's cell phone

that was seized at the time of his arrest. A partial extraction of Ali-Suleiman's phone was

obtained. Ali-Suleiman's Apple iPhone 13 contained the following social media accounts

used by Ali-Suleiman: Snapchat account u2dakush; a Snapchat pending request for "Lolo

Jones," sent April, 28, 2018; Instagram accounts UKKASHAALI08 and u2dakush (the

TARGET ACCOUNTS); and the X/Twitter account "Wa7ish Ali." On Ali-Suleiman's

phone, there were screen captures of the X/Twitter account @wa7ishAli that included a

photo of Ali-Suleiman and the below tweet that was a photo of Jones and the caption,

"Everything I ever prayed for @lolojones [emoji] on god [two emojis]."



18.     The phone also contained a screen capture of posts on Instagram using

username UKKASHAALI08, one of the TARGET ACCOUNTS. Lastly, the phone

contained an Instagram post by username u2dakush, the other TARGET ACCOUNT, dated

May 31, 2022 which showed Jones and stated, "the weeding is happening" and "can you tell her that I'm coming soon," as shown below:



19.     On February 14, 2024, a federal grand jury in the Middle District of Louisiana returned an indictment charging Ali-Suleiman with violating 18 U.S.C. § 2241A(1) (interstate stalking).  *See United States v. Ali-Suleiman*, 24-cr-12, M.D.La., ECF No. 1.

20.     Due to the totality of the circumstances presented, there is probable cause to believe that Ali-Suleiman accessed social media accounts and used the TARGET ACCOUNTS in the commission of the offense of stalking in violation of 18 U.S.C. § 2261A(1).  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the

government records and other information in its possession, pertaining to the subscriber or customer associated with the TARGET ACCOUNTS. A preservation request, number 8460759, for the TARGET ACCOUNTS was sent to Meta on February 15, 2024, pursuant to a request under 18 U.S.C. § 2703(f).

## BACKGROUND CONCERNING INSTAGRAM[1]

21.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the TARGET ACCOUNTS listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

22.    Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

23.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

24.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

25.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected X/Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

26.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen

their comments.  Instagram also allows users to create a "close friends list" for targeting

certain communications and activities to a subset of followers.

27.     Users have several ways to search for friends and associates to follow on

Instagram, such as by allowing Meta to access the contact lists on their devices to identify

which contacts are Instagram users.  Meta retains this contact data unless deleted by the user

and periodically syncs with the user's devices to capture changes and additions.  Users can

similarly allow Meta to search an associated Facebook account for friends who are also

Instagram users.  Users can also manually search for friends or associates.

28.     Each Instagram user has a profile page where certain content they create and

share ("posts") can be viewed either by the general public or only the user's followers,

depending on privacy settings.  Users can customize their profile by adding their name, a

photo, a short biography ("Bio"), and a website address.

29.     One of Instagram's primary features is the ability to create, edit, share, and

interact with photos and short videos.  Users can upload photos or videos taken with or

stored on their devices, to which they can apply filters and other visual effects, add a caption,

enter the usernames of other users ("tag"), or add a location.  These appear as posts on the

user's profile.  Users can remove posts from their profiles by deleting or archiving them.

Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

30.     Users can interact with posts by liking them, adding or replying to comments,

or sharing them within or outside of Instagram.  Users receive notification when they are

tagged in a post by its creator or mentioned in a comment (users can "mention" others by

adding their username to a comment followed by "@").  An Instagram post created by one

user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

31.    An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

32.    Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

33.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

34.    Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.

Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

35.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

36.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

37.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

38.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39.    For each Instagram user, Meta collects and retains the content and other
records described above, sometimes even after it is changed by the user (including
usernames, phone numbers, email addresses, full names, privacy settings, email addresses,
and profile bios and links).

40.    Ali-Suleiman posted a photo of himself in front of Jones' residence and
messages related to Jones on Instagram using the TARGET ACCOUNTS.   In my training
and experience, evidence of who was using Instagram and from where, and evidence related
to criminal activity of the kind described above, may be found in the files and records
described above.  This evidence may establish the "who, what, why, when, where, and how"
of the criminal conduct under investigation, thus enabling the United States to establish and
prove each element or, alternatively, to exclude the innocent from further suspicion.

41.    For example, the stored communications and files connected to an Instagram
account may provide direct evidence of the offenses under investigation.  Based on my
training and experience, instant messages, voice messages, photos, videos, and documents
are often created and used in furtherance of criminal activity, including to communicate and
facilitate the offenses under investigation.

42.    In addition, the user's account activity, logs, stored electronic
communications, and other data retained by Meta can indicate who has used or controlled the
account.  This "user attribution" evidence is analogous to the search for "indicia of
occupancy" while executing a search warrant at a residence.  For example, subscriber
information, messaging logs, photos, and videos (and the data associated with the foregoing,
such as geolocation, date and time) may be evidence of who used or controlled the account at
a relevant time.  As an example, because every device has unique hardware and software

16

identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

43.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, accounts are often assigned or associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities. This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

45.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

46.     Based on the forgoing, I request that the Court issue the proposed search warrant.

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____

Chandler Hudspeth
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/pdf. and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the __25th__ day of March, 2024.

_____

SCOTT D. JOHNSON, MAGISTATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

18

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account **u2dakush** and

**UKKASHAALI08** (active on, but not limited to, **08/01/2021**) (the "**TARGET**

**ACCOUNTS**"), that is stored at premises owned, maintained, controlled, or operated by

Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park,

California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

I.    **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on **February 15**, **2024**, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **from 08/01/2021 to** present.

7.      Privacy and account settings, including change history; and

8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.      All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments,

mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from 08/01/2021 to present**;

C.     All content, records, and other information relating to communications sent from or received by the account **from 08/01/2021 to presen**t, including but not limited to:

    1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.     All associated logs and metadata;

3

D.      All content, records, and other information relating to all other interactions between the account and other Instagram users **from 08/01/2021 to present**, including but not limited to:

   1.      Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

   2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

   3.      All contacts and related sync information; and

   4.      All associated logs and metadata;

E.      All records of searches performed by the account **from 08/01/2021 to present**; and

F.      All location information, including location history, login activity, information geotags, and related metadata **from 08/01/2021 to present**.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of **18 U.S.C. § 2261A(1) (interstate stalking)**, those violations involving **Ukkasha Ali-Suleiman** and occurring after **08/01/2021**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.    Records related to Lolo Jones ("Jones") in any way;

B.    Records related to any known associates of Jones in any way;

C.    Evidence that places the user of the TARGET ACCOUNTS in locations Jones was likely to be found;

D.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

E.    Evidence indicating the account owner's mental state as it relates to the crime under investigation;

F.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete

copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Meta.  The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**].  I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.    such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

1

2.      the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                                      Signature

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT U2DAKUSH AND UKKASHAALI08  THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | ) Case No.  24-mj-28 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____April 5, 2024,_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Scott D. Johnson_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____.

Date and time issued: _____March 25, 2024, at 2:02 p.m._____          _____*Scott Blinn*_____
                                                                          *Judge's signature*

City and state: _____Baton Rouge, Louisiana_____          _____Scott D. Johnson, U.S. Magistrate Judge_____
                                                                          *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  24-mj-28 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

Special Agent Chandler Hudspeth, FBI
_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with Instagram account **u2dakush** and

**UKKASHAALI08** (active on, but not limited to, **08/01/2021**) (the "**TARGET**

**ACCOUNTS**"), that is stored at premises owned, maintained, controlled, or operated by

Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park,

California.

1

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on **February 15**, **2024**, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

        1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.        Length of service (including start date), types of services utilized,

purchases, and means and sources of payment (including any credit

card or bank account number) and billing records;

4.        Devices used to login to or access the account, including all device

identifiers, attributes, user agent strings, and information about

networks and connections, cookies, operating systems, and apps and

web browsers;

5.        All advertising information, including advertising IDs, ad activity, and

ad topic preferences;

6.        Internet Protocol ("IP") addresses used to create, login, and use the

account, including associated dates, times, and port numbers, **from

08/01/2021 to** present.

7.        Privacy and account settings, including change history; and

8.        Communications between Meta and any person regarding the account,

including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account),

records, and other information relating to videos (including live videos and

videos on IGTV), images, stories and archived stories, past and current bios

and profiles, posts and archived posts, captions, tags, nametags, comments,

mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from 08/01/2021 to present**;

C.    All content, records, and other information relating to communications sent from or received by the account **from 08/01/2021 to presen**t, including but not limited to:

1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.      All content, records, and other information relating to all other interactions between the account and other Instagram users **from 08/01/2021 to present**, including but not limited to:

     1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

     2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

     3.     All contacts and related sync information; and

     4.     All associated logs and metadata;

E.      All records of searches performed by the account **from 08/01/2021 to present**; and

F.      All location information, including location history, login activity, information geotags, and related metadata **from 08/01/2021 to present**.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of **18 U.S.C. § 2261A(1) (interstate stalking)**, those violations involving **Ukkasha Ali-Suleiman** and occurring after **08/01/2021**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.      Records related to Lolo Jones ("Jones") in any way;

B.      Records related to any known associates of Jones in any way;

C.      Evidence that places the user of the TARGET ACCOUNTS in locations Jones was likely to be found;

D.      Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

E.      Evidence indicating the account owner's mental state as it relates to the crime under investigation;

F.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete

5

copy of the disclosed electronic data to the custody and control of attorneys for the

government and their support staff for their independent review.